Thank you. Good afternoon. John Ballas on behalf of the appellant defendant Danny Lowe. I'm intending to focus on the first two of the four claims in my brief and reserve three minutes for rebuttal. The charges here arise out of a fictitious sting operation where an undercover officer posing as a relative of two fictitious minors, Gabriella and Crystal, placed an ad on Craigslist message board stating that his two little cousins were in town and wanted to meet guys. After exchanging a series of text messages over five and a half months, Lowe was arrested after he went to a motel suggested by the officer. At trial he raised an entrapment defense which the jury rejected. We first contend that Lowe's convictions must be reversed because the defendant, the government, improperly presented evidence that other agents have reviewed Lowe's text message exchange with the undercover officer and concluded that Lowe was not entrapped. In particular, first detective Torres, the case agent who had been texting with Mr. Lowe, testified that to prevent entrapment he routinely ran his chats through other officers to make sure we are not entrapping somebody in our conversations. And then he repeated that officers show their text messages to other team members who stopped them from going further when appropriate. But could I ask you, you've been arguing that that was vouching, but vouching is usually talking about a witness's honesty or dishonesty and this seems to me, if anything, more of a issue of testimony on a legal conclusion, possibly a rule 701 violation, but not because of vouching. So could you explain how you've chosen vouching as the objection to make here? Well, in the United States versus Roberts, this court explained that vouching could be in two different ways. First is when the prestige of the government behind the supports the witness's testimony. And on this, the second prong there, the second former vouching, the court held that it was error when in fact, the prosecutor was telling the jury that another witness could have been called to support the witness's testimony. But isn't the real issue that all of this testimony was about the legal question about whether this was vouching and not really about whether the witness was accurately describing the text that were the facts? Well, I think it's both. I did raise specifically a rule 704 violation with respect to Agent Gowden's testimony. But I also think that, for example, with Detective Torres, where he talks about working as a team, they talk about having other officers review his text. And the clear implication of this is that the other officers reviewed the text, determined that there was nothing inappropriate. And it supports his credibility, his testimony, that his idea that he was not entrapping Mr. Lowe into committing these offenses. Was there any dispute about what the text said on both sides of the exchange? No, I mean, well, there was a little dispute in that there was one text message in the beginning that was missing. And then Mr. Lowe testified that he believed some other texts were missing. But the majority of the texts were presented as an exhibit. So both sides have them and the jury have them as well. So, counsels, Judge Gould, if I could ask this, have you fully answered Judge Friedland's question? And if so, I've got one for you. I think I have. So my question is this. Speaking just as one judge, I tend to think that what other officers say or think about what's entrapment doesn't have significant weight because it seems like a legal conclusion that it's up to our panel to decide. However, as to your claim that this constituted vouching, my question is, when that testimony came in, was there an objection made in the courtroom to flag the issue right then for the trial judge? Or are we reviewing for plain error? The court is reviewing for plain error. There was no objection. But I think in these circumstances, it qualifies as a plain error. There was an error. It was plain or obvious. It affects Mr. Lowe's substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceeding. There was substantial evidence to support an entrapment defense. Lowe stated in his text a number of times that he was not interested in children. There were times where Lowe went days or even weeks without responding to the officer's text. And it wasn't until about five and a half months later, on September 12th, after the Taurus claimed, kind of pushed Mr. Lowe, claiming he was hurt and angry, and accused Lowe of disrespecting him before Lowe then responded. And they set up a meeting later that day. Lowe also testified at trial that he was not looking to meet anyone under 18 and was not interested in children. And when he went to the motel, he actually didn't bring any evidence. The standard under Dominguez-Benitez is an error that affects substantial rights where there's a reasonable probability that without the error, the result of the proceeding would have been different. And I think that we have that here, both with Detective Taurus's testimony that other officers were reviewing his text to ensure there was no entrapment, as well as Detective Gowden's testimony. And she testified that she and other members, other officers of the team, reviewed chats and text messages as well. Counsel, you raised an argument with regard to Rule 704B as to Detective Gowden's testimony. What is the mental state that you argue that Detective Gowden testified about under Rule 704B? So I believe that the mental state under entrapment is that the government must prove that he was not predisposed to commit these crimes. And so in that sense, her testimony was directly related to that mental state. Well, doesn't predisposition mean that he had a tendency to be involved in these crimes, or a tendency, for example, to be sexually attracted to children? Isn't that what predisposition means? I think that's a good formulation of it. And I think that in this case, Agent Gowden reviewed not only Detective Torres' text, but also Mr. Lowe's responses. And in the jury instruction to the jury as to how did they determine the entrapment defense, they list five specific factors on predisposition. This is an excerpt of record, page 75. And one of the factors, the fifth one, is that the nature of the government's inducement or persuasion is a factor the jury can consider in determining whether or not Mr. Lowe had the predisposition to commit these crimes. So Agent Gowden's testimony, I think, goes actually both predisposition, it also goes to the government's inducement, which is part of the determination of the mental state of predisposition under the jury's instructions. Let me move to my second argument, and that is that even in the light most favorable to the government, the evidence was insufficient for a rational juror to find beyond a reasonable doubt that Lowe believed the fictitious minor Gabriella in count one had not attained the age of 14. This is significant because otherwise the mandatory minimum would be 10 years, and with the finding that she had not attained the age of 14, the mandatory minimum now is 15 years. And the government points to a couple of text messages from Detective Torres to show that Mr. Lowe would have believed that Gabriella had not attained the age of 14. In particular, the first one on March 27th, where he says that Crystal is going to be 15 soon, and Gabriella is going to be 14. And then a message about a month later, where he repeats that the two girls are ages 13 and 14. But I think that if I would tell... There's also the one on September 12th, right at the time of the crime, right, about how they look, and one of them looking 13. Yeah, but that one states, doesn't say that she is still 13, it says that they look 13 and 14 year old. If I would tell the court today that I have two daughters, and my daughter Crystal is going to be 15 soon, Gabriella is going to be 14, and then a month later at a Christmas party, I told you that Gabriella is still 13. And then we get to April, and in April, I state that my daughters look 13, look 13 and 14. Is there enough difference between how a 13 year old and a 14 year old look, if there's any reason to mention a 13 year old, if they're not 13? I think that the description of the ages, in that they look that age rather than they are that age, is not... You can't have any confidence that the younger one is still 13. And I... It just seems like an odd thing to say if she's not still 13, because there's not that much difference between how someone looks when they're 13 or 14. Maybe there's not that much difference, but he did use the phrasing that the girls look rather than are 13 or 14. And so I think under all the circumstances, when you have to, a jury has to establish here. And I will... Unless there's other questions... Can I just ask about that, though? Is reckless disregard an adequate mens rea for the age? I don't think it is here. And let me... I don't think it is because there were no photos shown. There were no photos shown, Mr. Lowe. Maybe if you have a case for that, when you come back, that would be great. Thank you. And in that vein, Counsel, isn't it fair to say that we're supposed to look at whether any rational trier of fact could have came to the conclusion that he believed that the younger girl was 13? That's correct. And my position is that no rational trier of fact could be confident and could conclude beyond a reasonable doubt when you're talking about someone's age now, and then you have to project a few months into the future. Hey, Counsel, I have a question also for you to consider. Okay. Before you come back. And take me up your time. So I'll give you some extra time. But my question is this. On the vouching issue, if this is under the plain error standard, one of the elements of that standard is that it has to be an error that is plain. It has to be error. It has to be plain. It has to be plain. My question to you is, what is the best case you have with a fact pattern similar to what was done here that you think makes clear that the vouching issue is a plain error? Because this case you cited earlier gave the general standards for vouching, which normally involve suggesting someone's credibility is high, or suggesting there's other evidence that hasn't been put in the record that supports the result. But this whole fact pattern here seems to me different than those. So I want to know your best case on similar facts. Okay. Okay. And Stacy, add an extra two minutes to the rebuttal time when he comes back. Okay, Mr. Corso. Yeah, thank you, Your Honor. I'm here. I was just adjusting my watch. I can't see the clock on the screen for some reason. But may it please the Court, Steve Corso for the United States. I'll begin on the vouching or the entrapment issue. Our position is there was no improper vouching here. The prosecutor did not make any personal assurances of either agent's truthfulness in any capacity. Never indicated that he had assessed the credibility of either agent. Never assured the jury that either agent was truthful in their testimony, either directly by talking to the jury or suggesting it in the testimony or questions to either witness. Never communicated to the jury that he believed either agent's testimony, or that a judge, somewhere in the process, had agreed with the testimony or agreed or made some sort of indication that Lowe had not been entrapped. He did not ask either witness if the witness believed the other, and he never asked either witness... Could I ask you why it wasn't testimony about a legal conclusion? I'm sorry, I didn't quite hear the question. Could I ask you why it was not testimony about a legal conclusion? Our view of the testimony is that it was not asking for a legal conclusion. It was asking for the procedures and protocols that the FBI had in place when they conducted the investigation of Lowe and whether they followed those procedures. What was the relevance of that other than to get the jury to make the legal conclusion that this wasn't vouching? I'm sorry, that this wasn't entrapment? Well, I don't know that the prosecutor was seeking to have the jury conclude there was no entrapment based on those agents' testimony. It looks to us that the prosecutor was seeking to establish what the protocols were. What was the relevance of the protocols? Why were the protocols relevant? They were relevant because the defense placed entrapment in issue pre-trial, and then in his opening statement claimed, as the defense, that Lowe was entrapped. But they had the text, right? So don't you just have to evaluate, okay, what was said, and is that entrapment? I don't understand how the protocols affect that analysis. The protocols signal to the jury that the FBI was aware of entrapment, that they had procedures in place to avoid entrapping Lowe, and that they followed those procedures. It signals to the jury that they were conscientious of not entrapping Lowe. And I agree with the court. This case is won or lost, guilty, not guilty, entrapped, not entrapped in the text messages. And this testimony from first Torres and then Special Agent Godin was a very minimal part of the case. And it was only a few questions. It's only a few pages in the transcript. And the testimony concerning these texts is enormous. There were just pages and pages of the text. Torres walked the jury through these texts, and there were quite a few texts. There were approximately 350 texts that took place over a five-and-a-half-month period. And it is clear from the text that Lowe was not entrapped. He was predisposed. Is entrapment an objective inquiry? So is it just objectively, was this entrapment, or do we need to know subjectively what the officers were trying to do? I don't think we need to know subjectively what the officers were trying to do, but I do think there is some relevance to communicate to the jury what the officers were doing. And it creates a context for the text by establishing the protocols and procedures. And then when Torres later in his testimony talked about specific text in which he described as giving Lowe an out, after Lowe did express on some occasions, very lightly, some reluctance and some hesitance, the FBI then did act properly by giving Lowe an out of the opportunity to break off the chat. But at that point, is it expert testimony, what the proper investigatory tools would be? I don't see it as expert testimony. I think at most, it might be lay testimony under 701. Neither officer was qualified as an expert. And they really were not opining per se. They were, again, discussing their protocols, their state of mind. And when Torres sent a text to Lowe in which he tried to essentially give Lowe the opportunity to break off the communication, Torres was testified as to what he was doing and why he was doing it and what his mental state was or what his interpretation or his explanation of his actions. So they weren't opining on the defendant and whether he was entrapped. They were testifying to their actions and their state of mind and what they thought and what they did and that it was consistent with their protocols. If we think that this was erroneous, why shouldn't we find it to be plain error? Even if the court does find error and does conclude there was improper vouching, it was so minimal that it didn't affect the integrity of the proceedings. It didn't result in a miscarriage of justice. Again, it was such a minimal part of the trial. It was relevant to the case because the entrapment defense was raised. And it's quite clear from the text that Lowe was not entrapped. His very first text to the officer in Exhibit 3 is he was worried that he had missed his opportunity to have an encounter with the girls. He texted if he was too late. He was given numerous opportunities to break off the chat. He declined. On many occasions, he re-initiated the chat, re-initiated the text messages after days and sometimes weeks had gone by. And he was interested in these girls. He on many occasions proposed dates and times and places to meet the girls. He talked about the sex acts he wanted to perform. He agreed on the price. And he showed up at the motel with condoms, personal lubricant, and cash to pay the price for the encounter with the girls. So we don't think it's a closed case as to whether he was entrapped. And it's certainly not a closed case as to his guilt or innocence. So given that, even if there is improper vouching, according to the court, we submit that it doesn't survive plaintiff analysis. There's no miscarriage of justice. And it did not impact the integrity of these proceedings, including his conviction and sentence and so forth. After the sufficiency of the evidence, the evidence was quite sufficient that the defendant believed that Gabriela was a real person and of the age of 13. This was communicated to him on March 27, 2017, in a text in which the officer described Gabriela would be 14 years old. It was reaffirmed to Lowe on April 25th of 2017, in which the officer described one of the girls as being 13 years old. In that exchange, the defendant essentially made a choice between a 13-year-old girl and a 14-year-old girl. The officer described one as cute and one as something else. And Lowe mused that, well, perhaps the 14-year-old, it might be legal in Alaska to have an encounter with a 14-year-old, but ultimately he would make his decision or pick between the two of them based on their breaths. And again, as the court has alluded to, on September 12th of 2017, again, the officer texted that one of the girls was 13 years old. So we feel that the jury was quite rational in determining that. Well, that's a characterization. The text didn't say she was 13 years old, right? It described two girls as, you know, as a 13 and a 14-year-old. As looking 13 and 14, right? Not as 13 and 14. But I think it was communicating that the girls were 13 and 14 years old, consistent with the prior text that the officer had sent Lowe, both in April of 2017 and in March of 2017. And there was less than a second... In the text, it said they are 13 or 14. I don't think we'd have this issue before us at all, right? The issue is that it says they look 13 and 14. Well, that's a very fine reading of the language in the text. We submit that what the officer was communicating to Lowe was that the girls were 13 and 14 years old, and that Lowe was not putting too fine of a print on the specific language, and that he fully expected to have an encounter with a 13-year-old girl. And there's no doubt that he was told that one of the girls was 13 years old in April of 2017. And that's, I think, less than five months until the September encounter at the hotel. And it's just not enough time for him to conclude that one of the girls was no longer 13 years old. So we do believe that the jury was rational in making that conclusion. Is the mens rea going? Is the mens rea knowledge, or is reckless disregard enough? It's either one. It's knowledge or reckless disregard. Counsel, on sufficiency, I just want to confirm my understanding of the applicable law. Is it not under, I thought the case was Jackson v. Virginia Supreme Court case, whether any rational juror on this evidence could have concluded that one of the girls was 13 less than, that is, less than 14? That's correct. It's a Jackson standard. They have to be, they have to say a rational juror could conclude that beyond a reasonable doubt. And I think I've understood your colleague's argument to be that they could not reach that conclusion beyond a reasonable doubt. If I'm reading that correctly, let me know why you think they could conclude that beyond a reasonable doubt. We believe it was rational because in March of 2017, the defendant received a text that one of the girls was 13 years old. It was reaffirmed to him in April of 2017, and it was again suggested to the defendant on September 12th of 2017. And less than six months passed between March of 2017 and September 2017. So it was entirely rational for the jury based on those text messages and the entire tenor of the text exchange to conclude and to believe that Lowe believed that that girl was under age 14 and specifically 13 years old. It's in the text messages. Thank you. Thank you, Judge. If there are no further questions on that issue, I'll move on to the multiplicity argument raised in the appellant's brief. To begin, any error in sentencing the appellant for all four counts of conviction was not plain. Neither this court or the Supreme Court or any other circuit court has addressed the allowable unit of prosecution in either section 1591 or in 2422B. And for that reason, the judge could not have been clear to the judge when he imposed sentence and entered judgment on these four convictions that the allowable unit of prosecution was not based on each girl or each victim in this case. And therefore, in imposing judgment and imposing sentence, he did not contravene any established precedent in this circuit or any Supreme Court law. And therefore, he acted. There was no error, no clear error in imposing judgment for all four counts. Beyond that, we contend there was no error. The appellant in his briefing cites the Supreme Court case Bell v. United States. But Bell is really inapplicable to these two statutes because Bell dealt with section 2421, or the Mann Act. And its methodology is appropriate. Its methodology in examining statutes to discern congressional intent as to what the allowable unit of prosecution is, that is applicable to this case. But the outcome in Bell in determining that two convictions under 2421 were multiplicitous does not control the outcome here. Counsel, isn't the real upheld battle for you the Brown case, Brown, which is a Ninth Circuit case from 1980 that points to the article any rather than a in a statute to suggest plural activity. And here, both subsections of 2422 use the article any, as in any individual suggesting plural rather than singular activity. We do not originally, Your Honor, that in 1591, 1591 uses a person. The singular does not use the individual. But you are correct. 2422 A and B do use any individual. So the argument from the government against multiplicity is a little bit tougher for us on 2422 B than it is in 1591. And in fact, your argument also, your argument also that they're differentiating punishments between A and B is also has an upheld battle in the sense that 2422 A is a different statutory provision than 2422 B, correct? Correct. Okay. Thank you. Correct. We believe, though, but in looking beyond just the that language of any individual, that if you look at the entire statute, all the language, the structure, the legislative history, we believe that all together, it supports the conclusion that Congress intended the allowable unit of prosecution to be based on the victim and not on the act. And I see I'm probably out of time. If there are no more questions, I will submit from the government. I'll tell you what, I'm giving Mr. Belaz extra time. So if you need another two minutes, you can take. Okay, I'll go ahead and take you up on that offer. Thank you. I want to talk a little bit about the language structure and legislative history of both 1591 and 2422 B. They're similar statutes. And again, we believe if you look at the predicate acts in those statutes, the acts relate to the conduct of the defendant or perpetrator toward the victim. And the language and structure and so forth require prosecutors, judges, defense lawyers to look at the individual victims involved in these in these offenses. It asks how the perpetrator trafficked the victims, how the perpetrator overcame the will of women and girls to engage them in prostitution and other illegal sexual activity. And it requires the parties to understand the problem for you is also about trafficking victims, right? transporting victims. So why is that different? Which case are you referring to your honor? I think I think it's brown, isn't it? Sorry, I'd have to figure out which one it is. But the case that has the you can only have a single offense, even though you are transporting many, whether you're transporting one person or more than one person across state lines. That sounds like the Supreme Court case Bell, but again, Bell applied to 2421. And the court's interpretation of the statute of 2421 is not controlling of how? Why not? You're saying that the statute is related to Sorry, I guess it is Bell, not Brown. The but the the point is a statute that is about victims can be a singular as opposed to multiple approach. So I don't what's the difference between transporting victims and the victim approach of these statutes? Well, transporting is only one of the predicate acts involved in these. The other statutes 1591 there are nine other predicate acts. And in 2422 B, there are four predicate acts that do not include transporting. And these predicate acts get into explaining how the defendant exercise control over the person trafficked. And they require a victim specific analysis in terms of how to charge the case and how to punish the defendant. As we know that the statutes have different penalty provisions based on the age of the victim. And there are different definitions in the statute, especially 1591 that require a victim specific analysis. And of course, the legislative history, the purpose of these statutes was to strengthen the department's ability to prosecute these trafficking and coercion cases by giving prosecutors the tools to large penalties and so forth. Congress has equated these offenses with human rights violations. And we can tend to look at everything together. There is controlling gloss, there is guiding light in both statutes that support the conclusion that the allowable unit of prosecution is based on the victim, not on the act. And thank you very much. The statute in Bell said, whoever knowingly transports an interstate or foreign commerce, any woman or girl for the prostitution, do you think that's less focused on the victim than these statutes? I do. That looks focused on the perpetrator, on the act of transporting. And the act of transporting is, we think, is less harmful. Transportation leads to the harm. It leads to the obtaining or patronizing a woman or girl for sex. It's not punished the same way. It's not as 1591 and 2422B punish those offenses. So we believe there's a much greater harm in a lot of these other predicate acts involving women and young girls. You mean because the sentence there was 5 years instead of 10? Is that what you mean by not punish the same? Yes. There are mandatory minimums in 2422B as well as 1591B1. And there aren't in 2421. And it's not so much the statutes. It's really what was Congress's intent. And if the court couldn't find intent in 2421, doesn't mean that the court cannot find intent in both 1591 and 2422B, the intent being Congress is allowing the unit of prosecution to be based on the victim and not on the act. We think both statutes are victim-focused, victim-based statutes. And that suggests to us that the prosecutor should be able to charge the cases based on the victims and not on the act alone. Hey, counsel, I think you've gone past my two minutes. But of course, you're answering Judge Friedland's well-thought-out question. So you can take the time you need for that. But if there's nothing further in response to Judge Friedland, we should try to bring the argument to a close. I'm happy to close. Thank you, Your Honor. Thank you, counsel. Now, Mr. Balazs, what's your response to Judge Friedland's question on the mens rea for Section 1591, whether about new or recklessly disregarded the fact? In this case, there were no actual minors. They were just fictitious. And the jury instructions used the mens rea that the defendant believed the minor had not attained the age of 18, except the record 72. And then on the special verdict regarding the minor one's age, except the record 78, it again used just the formulation that the government approved beyond a reasonable doubt. The defendant believed that Gabriella was a real person. There was no instruction about the reckless disregard mens rea. With respect to Judge Gould's question, whether or not I have a closer case to the facts of our case, I do not. But the principle itself, I think, is fairly clear and straightforward, that it's an error when the prosecutor is telling the jury that another witness could have been called to support the witness's testimony. And that's pretty plain, both here and in the Roberts case and other cases. And my third and last point was regarding why the error in vouching in the Rule 704B error should require a reversal under the plain error standard. I do want to point out that Agent Gooden's testimony was emphasized and referred to by the prosecutor in the closing argument. That's at page, jury trial, day three, reporter's transcript, page 196. And so I think, especially because of that, as well as the other reasons, there was at least a reasonable probability that it would have affected and influenced the jury. Thank you. Okay, I have a final question for you. If the panel were to decide, for sake of argument, that they reject the entrapment defense, but that there was some error on the multiplicity issue, and that at least one of the convictions had to be vacated, how would that affect the actual sentence that he got here of 16 years in light of the 15-year mandatory minimum on the A1 violation, assuming that's not rejected on entrapment grounds? So, I believe, I'm saying this and now I'm questioning myself, but my notes say that it would, I think that the guideline score would go down under the multiple count grouping rules. And also, under the Zalapa Ninth Circuit case, each count carries a special assessment, and there's also potential for collateral consequences. So, Zalapa is a pretty strong case that reversals are required, even under plain error, when counts are multiplicitous. You'd have to reverse that count, right? But if you reverse, if you reverse the multiplicitous count, but there was still a different count that was sustained, that had or affirmed, that had a 15-year mandatory minimum, would that just mean it would go back for resentencing? Then the judge, instead of sentencing for 16 years, could have sentenced right at the mandatory minimum. I realize you don't agree there's that violation that gets the mandatory minimum, but that's the question I've had in my mind. I think that's correct. If the court disagrees with me and finds that there's still a 15-year mandatory minimum, but finds counts to be multiplicitous, it would be to vacate that count and to remand for resentencing on the remaining counts. Okay, thanks, counsel. Well, I may have exhausted our panel and the advocates with the excellent arguments from both Appellant's counsel and Appellee's counsel, and we appreciate that you both have made all the extra efforts necessary to help the panel on this case to understand the difficult issues. So, unless there is some further comment from my panel members, I will ask Stacey to please note that the low case shall be submitted, and the parties will hear from us in due course. Thank you. Thank you.
judges: Gould, Friedland, Otake